**King v. Hope**

*Roland Atkins*, for plaintiffs.
*Corin A. Greaves*, for defendants.

BULLOCK, *J.*, January 7, 1981—Before this court is the petition of Reverend Philip M. King (hereinafter referred to as plaintiff) as pastor of Sharon Baptist Church, a corporation, and certain other members of the said church, for a rule to show cause, directed at defendants, various officers of the said church, requesting that the court: (1) declare null and void an alleged church meeting held on November 14, 1980, at which time plaintiff was allegedly removed as pastor of the said church, (2) order defendants to make certain monetary payments to plaintiff, and (3) order defendants not to interfere with church services or with plaintiff in the exercise of his duties. The court made the rule returnable on January 5, 1981. Defendants filed an answer to the petition. A hearing was held and testimony taken, as scheduled, on January 5, 1981.

This case involves a dispute which has existed at least for two years between plaintiff, Rev. Philip M. King, pastor of Sharon Baptist Church and various of its officials and members. In March, 1980 plaintiff filed a complaint in equity (C. P., March Term, 1980, no. 1217) requesting that defendants be enjoined from interfering with the exercise of his pastoral duties. Pursuant thereto, Honorable Harry

56

A. Takiff ordered a court-supervised vote as to whether the pastor should be retained.* This vote was taken at a meeting on April 10, 1980. At that time a majority, but less than two-thirds of the church members, voted in favor of removing plaintiff as pastor. Since the church constitution and bylaws require a two-thirds vote for removal of the pastor, the pastor was not removed by the vote of April 10, 1980.

In May, 1980 plaintiff filed the present action, again seeking to enjoin defendants, various church officers, from interfering with plaintiff in his duties as pastor. Plaintiff also requested the court to declare certain church offices vacant and to grant other miscellaneous relief. This court, after a hearing on June 4, 1980, denied preliminary relief but retained jurisdiction of the case. A meeting to vote on the pastor's retention was scheduled by the church for July 8, 1980. On July 8, 1980 plaintiff filed a petition requesting that an accounting be rendered by defendants and that the vote scheduled for the same day be stayed. A stay until August 5, 1980 was granted by another court during this court's vacation. This court on August 5, 1980 denied the petition stating "The Church is free to conduct a vote in accordance with its Church law." Defendants then on September 23, 1980 petitioned the court to supervise a vote on the retention of the pastor. Attached to the petition were allegedly the signatures of 177 members of the church. This petition was denied by this court. Subsequently, on November 14, 1980, a church meeting was held and a vote taken, at which time allegedly 135

---

*Judge Takiff also ordered certain accounting with which we are not here concerned.

members voted to dismiss the pastor, one member voted to retain him and there were two blank ballots. Plaintiff did not attend the meeting.

We have avoided any discussion of the numerous and acrimonious charges and countercharges in this case. Apparently, for over two years the parties, both with and without the aid of counsel, have been unable to resolve their differences. Our primary concern at this point is the legality of the meeting of November 14, 1980, at which time plaintiff was allegedly removed as pastor. We confined the testimony on January 5, 1981 to this issue, as much as was possible.

Plaintiff contends in his petition that the November 14, 1980 meeting was unlawful for the following reasons. (1) The meeting was held without any prior convening of a "council of ministers." (2) The meeting was premature in that it was held within a year of the meeting of April 10, 1980 ordered by Judge Takiff. (3) The meeting failed to comply with the Bible: St. Matthew 15:18. (4) A quorum was not present at the meeting of December 14, 1980. (5) Unauthorized persons were present and voted at the meeting of November 14, 1980.

1. Plaintiff argues that he may not be ousted by the church members without there first having been convened a "council of ministers." He cites as authority The Hiscox Guide for Baptist Churches, a copy of which was offered in evidence. Article III of the constitution and bylaws of Sharon Baptist Church incorporates Hiscox by reference as follows:

*"Article III—Church Government*

The faith and government of the said Church shall be in conformity with the teachings of Jesus

Christ, and in agreement with Rules of Order as enunciated in E. T. Hiscox Manual for Baptist Churches, or any similar Manual for Baptist Churches pertinent to the day."

The section of Hiscox referred to is Chapter III, Section H, the latter section entitled "Accused Ministers." On pages 67-8 the following language appears:

"A council called to advise in matters relating to the trial of an accused minister can only be called by a church; and by that church of which such minister is a member. Having no ecclesiastical authority, it cannot be called to try, nor if he is found guilty, to depose a minister. Judicial acts belong to a church, and not to a council; nor can a church transfer its authority for the exercise of judicial functions to any other body. A council, in order to express an opinion and give advice, is asked to examine all the facts, consider all the circumstances, sift and weigh the evidence on all sides, the accused having full opportunity to defend himself. In a modified, but not in a judicial sense, it may be called a trial of the accused, because it is a search for the merits of the case by an investigation of all the facts and a sifting of all the evidence."

Thereafter, the same section provides at p. 68:

"The final action of a church, as to an accused minister, may take any one of the following forms:

1. That of an acquittal, . . .
2. That of admonition: . . .
3. That of withdrawal of fellowship from him as a minister of the gospel, : . .
4. That of the withdrawal of fellowship from him as a church member, . . . ."

Nowhere does Hiscox provide that the convening of a council of ministers is a condition precedent to the removal of a pastor by the congregation. On the contrary, Hiscox would appear to emphasize the power of a congregation to select and continue in office its pastor. Hiscox states, at pp. 59-60:

"Churches secure their pastors by election, as the free choice of the people, in each individual church. It is an essential part of the independence of the churches, the right to choose their pastors and teachers. No individual or combination of men can appoint pastors over them, nor compel a church to accept as officers those whom they have not chosen. This is the polity of the New Testament, and has ever been the usage of our people. A free people demand and maintain the right to choose their own rulers. They may ask or accept advice, but no man is a pastor to any people until he has been chosen by their majority vote."

We note here that Hiscox, Appendix D, entitled "Rules of Order," p. 231, in essence incorporates by reference "the ordinary parliamentary rules of order commonly used in all deliberative bodies." Moreover, the section on "Voting," p. 233-4 by clear implication provides that a motion may be carried by majority vote.

Article XVI of the Constitution and By-Laws of Sharon Baptist Church provides as follows:

"The Pastor must give to the Church three months notice of his intention to sever his relations with the Church, and the Church must give to the Pastor three months notice of their intentions to sever their relations with him, or must give him three months salary at his dismissal."

We cannot conclude that the convening of a council of ministers is a condition precedent to a vote to remove a pastor. Neither this church's own constitution and bylaws nor Hiscox require it. We note, moreover, that Judge Takiff did not defer a vote on retention of the pastor until after the convening of a counsel of ministers, though we do not know whether the subject contention was made to him. Whether such a council was not called because the pastor did not desire it or because defendants did not desire it, we regard as irrelevant.

2. The contention that the meeting of November 14, 1980 was unlawful and premature, being within a year of the vote of April 10, 1980, we regard as utterly without merit. Plaintiff points to no authority to support this contention but relies merely upon consideration of "equity."

3. Plaintiff contends that the meeting of November 14, 1980 was unlawful because it failed to comply with the Bible: St. Matthew 15:18. We believe this reference may be an erroneous citation since this chapter and verse seem irrelevant to this case. In his petition plaintiff states that this verse "mandates that defendants meet with the pastor to discuss their 'charges.'" Suffice it to say that the evidence before us made it very clear that defendants and the pastor have, on numerous occasions over the past two years, both with and without counsel, attempted without success to resolve their differences. We do not consider it our responsibility to attempt to evaluate the reasonableness of the respective positions taken. We also note that we do not consider the civil authorities, including the judiciary, competent to interpret "the teachings of Jesus Christ," the words of Article III of the constitution and bylaws on the basis of which plaintiff

contends St. Matthew 15:18 is incorporated by reference into them.

4. Plaintiff contends that the meeting of November 14, 1980 was unlawful because he was not present. Plaintiff relies on Article XV of the Constitution and By-Laws which provides as follows:

"Article XV—Duties

"Seven or more members of the Church, along with the Pastor, must be present in order for the meeting of the Church to be called to order."

In our view, plaintiff's interpretation of this provision as applicable in the present case is unreasonable. Plaintiff would have it that he is empowered to thwart the wishes of the total membership of the church to remove him simply by failing to appear at a meeting called to consider his retention. Moreover, any such construction is clearly contrary to the above quoted language from Hiscox regarding the right of the church membership to determine its pastor.

5. No evidence was offered to support plaintiff's contention that the vote on November 14, 1980 was unlawful because unauthorized persons were permitted to vote. The church clerk, Mrs. Mary Mathews, testified and identified the minutes of the meeting recording the action of the church on the said date. They recite that 138 votes were cast, 135 to dismiss the pastor, 1 to retain the pastor and 2 blank ballots. There appears no irregularity in these minutes. We note, moreover, that, although this was not made an issue by plaintiff, she testified to facts establishing that the requirements for notice of the meeting were complied with.

It is thus our conclusion that on November 14,

1980 plaintiff, Reverend Philip M. King, was lawfully removed as pastor of Sharon Baptist Church. Moreover, under the circumstances of this case, we conclude that plaintiff, at the time of his removal, was entitled to three months' future pay, in addition to any pay owed him as of that date.

We are aware that there are various issues raised in plaintiff's petition which are unresolved by our present finding. We shall arrange a conference with counsel in an effort to determine if they can be amicably resolved. We shall also at that time consider whether a future hearing in this matter is required.

## ORDER

And now, January 7, 1981, plaintiff's petition requesting this court to declare null and void a certain meeting of Sharon Baptist Church held November 14, 1980 is denied. We hereby declare that, as of the said date, plaintiff, Reverend Philip M. King, was lawfully removed as pastor of Sharon Baptist Church. With respect to any of the other requests of the subject petition, we defer ruling pending conference with counsel and, if necessary, a further hearing.